**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **MARIANO MORALES**, *et al.*, <br><br> Defendants. | **Case No. 03 CR 90** <br><br> **Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motion for a New Trial filed by Defendant Mariano Morales ("Morales"), a Motion by Defendant Miguel Rodriguez ("Rodriguez") for Attorney Review of the Jury's Trial Notes and for an Evidentiary Hearing, and the Government's Response. For the reasons stated herein, the Motions filed by Defendants Morales and Rodriguez are **denied**.

### I. BACKGROUND

On October 6, 2008, the Court selected twelve anonymous jurors and six alternate jurors to serve in the prosecution of this multi-defendant gang racketeering case. After a two-month trial, on December 10, 2008, the jury convicted Defendants Mariano Morales, Arturo Barbosa, Harold Crowder, Miguel Rodriguez, Brian Hernandez, Romel Handley, and Lionel Lechuga on multiple criminal counts. The jury was unable to reach a verdict

as to Defendant Stephen Perez. After polling the jurors in open court, the general verdict was entered against all Defendants, except Perez who agreed to a mistrial.

While the trial was proceeding and during jury deliberations, the Court received several notes from the jurors, some of which are the basis for Defendants' current motions and are discussed below. Each of the notes received by the Court from the jurors was preserved, as was the Court's response.

On October 8, 2008, early in the trial, the Court received a note from Juror 107, which read as follows:

> "This is just a matter of jury protocol and not specifically about the case, but a specific juror is continually speaking about what lawyers do not like in terms of jurors and this juror specifically states that 'Teachers are Liberal' usually they throw 'teachers' off the jury. Other inappropriate conversation also includes discussing what people wear, suits or professional attire. While these comments, ostensibly are not directed at any specific juror, our professions are listed on the sign in sheet and these types of comments related to how a juror might make a decision regarding the case are inappropriate and for the jurors who are the profession the juror is speaking of could be overheard or believed to be intimidation, coercion or alienation. The statements were made before the (overheard) jury had been selected in the courtroom (washing area) and now that the jury has been selected they are being repeated and made in the jury room. Can you address this inappropriateness? Thank you."

After receiving this note, the Court orally instructed the jury not to discuss the case with one another or others until the evidence concluded and they received further instructions. The Court also instructed the jury to refrain from evaluating "witnesses, the facts of the case, the jury selection, the lawyers, the judges" and that each juror keep opinions to himself or herself. After this instruction, the case continued for several weeks without further similar notes. After final arguments and the Court's instructions, the alternate jurors were dismissed, and the jury began its deliberations.

During deliberations, the Court received a handful of notes from the foreperson requesting assistance from the Court. At the end of the day on December 9, 2008, the Court received the following note from the foreperson:

> "We had several incidents today where one juror became verbally abusive to the other members of the jury and especially aggressive to one particular juror. I have tried to restore a professional atmosphere in the jury room but I have not been successful in doing that. I need help in dealing with this situation if the jury is to continue to work effectively."

After discussion with counsel, the Court sent the following written response:

> "It is important that jurors function together as a whole. While it is healthy to have spirited exchanges of ideas, it is, however, most important that each individual juror respect the views of the other jurors

> and discuss the issues without aggression.
> Please work together with the aim of
> arriving at a decision compatible with the
> individual views of each juror."

The next day, December 10, 2008, the Court received another note from the foreperson:

> "We have reached a unanimous decision on 7
> of the defendants. On the 8th defendant we
> are not unanimous with a vote of 11 to 1.
> We do not believe that we can reach a
> unanimous decision no matter how long we
> continue our deliberations. Will our
> inability to reach a decision on one
> defendant affect our verdict on the other
> defendants?"

In response to this note, the Court sent the following written response:

> "The answer to your question whether your
> inability to reach a decision on one
> defendant affects your verdict on the
> remaining defendants is 'no.' You may, if
> you choose, issue verdicts at this time on
> any defendant about which there is a
> unanimous decision. You can do so by
> signing and dating the appropriate verdict
> forms and advising the marshal. If you
> choose to return verdicts on any of the
> defendants at this time, your verdicts will
> be final. I will, however, request that you
> continue deliberating on the remaining
> defendant with the object of reaching a
> unanimous decision on that defendant."

A few hours later, the foreperson informed the Court that the jury reached a final verdict on seven of the eight defendants. The verdicts were published in open court, and each juror was polled without any dissent. The Court instructed the

jury to return to its deliberations to "make every reasonable effort" to reach a unanimous verdict as to the eighth defendant, Mr. Perez. The Court repeated its standard instruction, requesting that the jurors to consult with one another, listen to the views of others, discuss differences with an open mind, and deliberate with the goal of reaching an agreement which is consistent with the individual judgment of each juror.

About one hour later, the foreperson informed the Court that the jury felt that it had reached an impasse in its deliberations. The Court received the following note from the foreperson:

> "The individual juror that has an opinion that is contrary to the other 11 has stated that they *[sic]* have what they believe to be reasonable doubts that will not change no matter how discussion/deliberations occur. The jury feels that we are at an impasse that cannot be overcome."

At this point, the Court declared a mistrial as to the eighth defendant, Mr. Perez.

The Court then commenced the portion of the trial relating to the *Apprendi* sentencing factors. None of the parties offered any additional evidence at the *Apprendi* phase. The next morning, December 11, 2008, before counsel began closing arguments with respect to the *Apprendi* factors, the Court received a note from Juror 107, which read as follows:

> "I am writing this note to say that as a
> juror in this trial, I spoke to some of the
> loud & boisterous jurors in early October
> about making remarks about witnesses,
> attorney's and discussing the case. This
> behavior went on to last about 3 wks. Jokes
> and other inferences about the case were
> made. It did stop after I made the request,
> but it did not completely cease. The only
> time I had to raise my voice in this case
> was during deliberations and it was because
> the same overbearing loud people would never
> let the voice and doubts of another juror be
> heard. Throughout this trial I have been
> both professional and concerned about both
> mercy and justice. I will continue to do so
> and it is my prayer that all will be given
> justice under every oath that all of us have
> taken."

The Court read Juror 107's note to counsel, and Defendants moved for a mistrial and requested that each juror be questioned individually regarding the extent to which the jurors discussed and prejudged the case prior to deliberations. The Government objected, and the Court denied the motion and suggested that the Defendants file a written motion.

After the attorneys presented their arguments regarding the *Apprendi* factors and the Court issued instructions, the jury returned to deliberations and arrived at a unanimous verdict as to each defendant later the same day. The Court polled the jury regarding each juror's *Apprendi* findings, and all responded affirmatively as to the verdict. The verdict itself showed that the jury gave separate consideration to each defendant and each

factor.  The Court also received and read in open court the following note, signed by all of the jurors:

> "We the Jurors realize that the gang activities of the Insane Deuces in Aurora have trained young boys to commit shootings; consequently, many are responsible, specifically the leadership of this gang. We believe that this violence must stop. We hope and pray that justice and mercy will be served. And in respect of <u>all</u> who lost their lives in this conspiracy, including the families of . . . [illegible] . . . We wish to express our deepest sorrows to their families."

Based primarily on the final note from Juror 107, on January 3, 2009, Defendant Rodriguez filed the current motion, requesting that the Court permit attorney review of the jury's trial notes and schedule a hearing with Juror 107 and the jury foreperson to determine whether impermissible jury bias permeated the trial and deliberations.  Rodriguez argued that a hearing may reveal jury bias or other misconduct that would violate his Fifth and Sixth Amendment rights.  On January 5, 2009, Defendant Morales made similar arguments in a motion for a new trial.

In response to these motions, the Government cites case law indicating that Defendants' arguments about alleged jury misconduct do not involve prejudice requiring a new trial or an evidentiary hearing.  In an abundance of caution, however, the Government recommends a limited hearing to expand the record for appeal regarding the discreet issue raised by the note from Juror 107.

## II. **DISCUSSION**

After reviewing the law and the facts of this case, the Court has determined that neither a hearing nor an *in camera* inspection or attorney review of the jurors' notes is required. Likewise, the Court rejects the motion for a new trial based on alleged juror misconduct.

The case law is clear that the Court should not invade a jury's decision-making process unless it has very good reason to do so. *See Tanner v. U.S.*, 483 U.S. 107, 119-21 (1987); *U.S. v. Briggs*, 291 F.3d 958, 963-64 (7th Cir., 2002). Accordingly, "[c]ourts are reluctant to haul jurors in after they have reached a verdict in order to probe for potential influences of bias, misconduct, or extraneous influences." *U.S. v. Infelise*, 813 F.Supp. 599, 605 (N.D.Ill., 1993). Post-trial hearings should only be held if the defendant comes forward with "clear, strong, substantial, and incontrovertible evidence that a specific, non-speculative impropriety has occurred." *Id.* The Court's determination as to whether a post-trial hearing is required is reviewed for an abuse of discretion. *See U.S. v. Sanders*, 962 F.2d 660, 668-69 (7th Cir., 1992).

No *per se* rule requires a court to investigate the internal workings of a jury when a defendant asserts jury misconduct, however, case law has established guidelines based on whether the

alleged influence on a jury is external or internal. *See Tanner*, 483 U.S. at 119-27*; Infelise*, 813 F.Supp. at 605. Courts are required to investigate allegations that *external* influences have tainted jury deliberations, but courts are prohibited from inquiring into *internal* abnormalities except "in the gravest and most important cases." *Tanner*, 483 U.S. at 119. This external/internal distinction is supported by "[s]ubstantial policy considerations," including efforts to insulate the jury's deliberative process, to encourage full and frank discussion in the jury room, to promote finality of the verdict, and to protect jurors against annoyance and embarrassment. *See id*. at 119-27; *see also Infelise*, 813 F.Supp. at 604-05 (discussing the policy considerations pertaining to Rule 606(b)).

In a case involving an alleged external influence on the jury, once a defendant has made a "colorable showing of extrinsic evidence" to overcome the presumption of jury impartiality, the court must investigate the alleged impropriety and determine whether the jury was tainted. *U.S. v. Davis*, 15 F.3d 1393, 1412 (7th Cir., 1994); *Infelise*, 813 F.Supp. at 605. "A defendant's mere allegations of taint or his unsubstantiated suspicions do not necessitate inquiry by the court." *Davis,* 15 F.3d at 1412*.* If the court determines that a post-trial investigation is required, the Seventh Circuit has held that Federal Rule of Evidence 606(b)

severely restricts inquiry, forbidding judges from inquiring "into the jurors' beliefs, opinions, discussions, grounds, etc., save as necessary to determine the existence and content of any unauthorized communication made to the jury." *Sanders*, 962 F.2d at 673. Questions are limited to "whether extraneous prejudicial information was improperly brought to the jury's attention" and "whether any outside influence was improperly brought to bear upon any juror." *Davis,* 15 F.3d at 1412*.*

In contrast with cases involving external influence, post-verdict interrogation of jurors is unnecessary and inappropriate when the misconduct alleged consists only of premature deliberations or internal pressure. *See Infelise*, 813 F.Supp. at 605 ("Clearly, investigating intrajury occurrences is inappropriate under Rule 606(b).")*; see, e.g., U.S. v. Logan*, 250 F.3d 350, 378-81 (6th Cir., 2001); *U.S. v. Williams-Davis*, 90 F.3d 490, 505 (D.C. Cir., 1996). Moreover, the Court need not hold an evidentiary hearing merely because intrajury misconduct is alleged. *See U.S. v. Kimberlin,* 805 F.2d 210 (7th Cir., 1986). For example, the Seventh Circuit affirmed a district court's denial of a motion for a new trial and its refusal to conduct an evidentiary hearing after a juror made an inappropriate remark to other jurors before deliberations indicating that he believed the defendant was guilty and should be hanged. *See id.* at 243-44 (holding that the "hearing

would be fruitless unless these statements, if made, would be presumed to be prejudicial").

In this case, there is simply no "reasonable probability" that the jury's verdict was affected by external influence. *See Sanders*, 962 F.2d at 668. None of the notes from the jury implicated any outside influence or contacts, nor did they alert the Court to potential prejudice that would pose the need for a mistrial. The first note sent by Juror 107 about the internal jury discussions prior to deliberations was written on one of the first days of the two-month trial. After receiving this note, the Court instructed the jury in open court regarding proper jury etiquette and the importance of waiting to discuss the evidence and the arguments until the deliberations phase of the trial. The Court determined that these instructions were proper and cured any potential internal problems among the jurors. District courts have "broad discretion to remedy prejudicial influences on a jury." *Id.* at 671. The Court has every reason to believe that the problem of inappropriate behavior discussed in this note did not involve any outside pressure and was cured by the instruction issued by the Court.

Similarly, the notes from the foreperson during deliberations did not express or imply any external pressure or misconduct on the part of the jury. The foreperson described dissension and discussion among the jurors that is typical, and indeed, desirable

in jury deliberations.  The Court instructed the jurors to treat one another with respect and to listen to one another's views, and the jury was able to come to a unanimous verdict on seven of the eight defendants the same day and a unanimous determination as to the *Apprendi* factors.  The jury's internal cooperation and deep consideration of the complex issues of the case is evidenced further by the note signed by all of the jurors given to the Court at the time that the *Apprendi* verdict was read.

Finally, Juror 107's last note does not imply external pressure, jury misconduct, or potential prejudice requiring an evidentiary hearing or a new trial.  Juror 107 informed the Court that, during the beginning of the trial, "loud and boisterous jurors" discussed and made jokes and inferences about the case, witnesses, and attorneys.  She explained that this behavior stopped after she made her request, presumably her first note to the Court in October, but it did not cease completely.  Juror 107 went on to explain that she had to raise her voice during deliberations in order to be heard by the other jurors.  The Court determined at the time that, based on the text of the note and its context, the note related to Juror 107's reasons for raising her voice during deliberations about which the foreman had complained.  After reviewing the record and considering Defendants' arguments, the Court comes to the same decision at this time.  Juror 107's final

note does not require a hearing to determine possible jury misconduct, bias, or external influence.

Based on the case law and the record in this case, the Court determines that a hearing at this time undoubtably would invoke evidence of the jury's decision-making process and would impose an unnecessary burden on the individual jurors. *See Tanner*, 483 at 119-21. Furthermore, the Court finds that, pursuant to the limitations set out in case law and in Rule 606(b), a hearing would be fruitless because the record is deplete of any evidence of improper external influence. *See Kimberlin,* 805 F.2d at 243-44. In sum, Defendants have failed to carry their burden of showing the requisite potential prejudice. Therefore, on this basis, the Court denies the motion for a new trial and the requests for an evidentiary hearing and review of the jurors' trial notes.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motions for a New Trial, for Attorney Review of The Jury's Trial Notes, and for a Hearing are **denied.**

**IT IS SO ORDERED.**

 

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 2/10/2009