UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 03-cr-90-6 |
| | ) | |
| MARIANO MORALES. | ) | Hon. Steven C. Seeger |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Mariano Morales received a life sentence in 2009 based on his involvement in a violent street gang. He now moves for resentencing under the First Step Act because part of the crime involved the distribution of crack cocaine. Additionally, or alternatively, he seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A).

For the following reasons, his motion for a sentence reduction under the First Step Act and/or compassionate release is denied.

### Background

In May 2006, Defendant Mariano Morales – and more than a dozen other defendants – was charged with multiple crimes for his role in the Insane Deuces gang, which plagued the streets of Aurora, Illinois. The charges included racketeering conspiracy (Count One), conspiracy to murder (Count Four), and conspiracy to distribute controlled substances (Count Nine). *See* Second Superseding Indictment (Dckt. No. 227). The RICO charge (Count One) alleged conspiracies to commit murders and to distribute drugs, including cocaine, crack cocaine, and marijuana. *See id.* at 14, 22.

Morales proceeded to a jury trial, which lasted about three months. *See* 10/7/2008 Order (Dckt. No. 1070); *United States v. Morales*, 655 F.3d 608, 619 (7th Cir. 2011). In December

2008, the jury found Morales not guilty on Count Four, but guilty on Counts One and Nine. *See* 12/10/2008 Order (Dckt. No. 1193).

Additionally, the jury returned a special verdict finding that Morales was responsible for the murders of David Lazcano, David Morales, and Erbell Valdez. *See* Special Verdict Forms, at 3 (Dckt. No. 1782). Based on the special verdict, the jury also found Morales accountable for the distribution of at least five kilograms of cocaine, at least 50 grams of crack cocaine, and at least 1,000 kilograms of marijuana. *Id.* at 4–5.

Because of the quantity of drugs in the conspiracy, Morales faced a mandatory minimum sentence of 20 years in prison and a maximum sentence of life in prison.[1] *See* 18 U.S.C. § 1963(a); 21 U.S.C. § 841(b)(1)(A)(ii), (iii), (vii) (1996).

On July 20, 2009, Judge Leinenweber adopted the Guidelines recommendation, and gave Morales concurrent sentences of life in prison for both Count One (again, racketeering conspiracy) and Count Nine (drug conspiracy). *See* Judgment, at 2 (Dckt. No. 1596).

Morales now moves for relief under section 404 of the First Step Act. *See* Def.'s Mtn. (Dckt. No. 2011). He requests a new sentence based on recent changes to the statutory sentencing range for crack cocaine. Additionally, or alternatively, Morales seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A).

**Analysis**

**I.     First Step Act**

Section 404(b) of the First Step Act allows "[a] court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act

---

[1] Before trial, the government gave notice to Morales that he had at least one prior conviction for a felony drug offense – specifically, possession with intent to distribute marijuana – and that it planned to use that conviction to enhance his mandatory minimum sentence for Count Nine to 20 years in prison. *See* Information Stating Previous Drug Conviction (Dckt. No. 564); 21 U.S.C. § 841(b)(1)(A) (1996).

of 2010 . . . were in effect at the time the covered offense was committed." *See* First Step Act, Pub. L. 115-391, 132 Stat. 5194, 5222 (2018). The Fair Sentencing Act, in turn, "increased the drug amounts triggering mandatory minimums for crack trafficking offenses." *See Dorsey v. United States*, 567 U.S. 260, 269 (2012).

Putting those two statutory pieces together, Congress empowered district courts to change sentences for crack cocaine offenses in certain instances. Based on the changes in the Fair Sentencing Act, the First Step Act "allows district courts to reduce the sentences of criminal defendants who have been convicted of" specific crack cocaine offenses. *See United States v. Hudson*, 967 F.3d 605, 607, 610 (7th Cir. 2020).

"Sentence reduction under § 404 is a two-step inquiry." *United States v. McSwain*, 25 F.4th 533, 537 (7th Cir. 2022). The first question is "whether the defendant is eligible for a sentence reduction." *Hudson*, 967 F.3d at 1610. The second question for the district court is "whether it *should* reduce the sentence." *Id.* (emphasis in original). First can; then should.

When considering step two, "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *See Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022). For example, district courts may consider "evidence of postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties." *Id.* at 2402–03; *see also United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022) (noting that *Concepcion* "held that, when substantive changes made by the First Step Act (principally reductions in the authorized ranges for crack-cocaine crimes) entitle a prisoner to be resentenced, the judge may consider everything that would have been pertinent at an original sentencing").

3

District courts have the power, but not the obligation, to change a sentence for crack cocaine. In the end, it boils down to the exercise of discretion. "[T]he decision whether to reduce a defendant's sentence, and by how much, is a decision committed to the discretion of the district court." *See McSwain*, 25 F.4th at 537; *see also United States v. Corner*, 967 F.3d 662, 665 (7th Cir. 2020) ("[T]he court's decision is discretionary; section 404(c) makes clear that the court is never required to reduce a sentence under section 404(b).").

A district court must also explain its reasons and address the parties' arguments. "[W]hen deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *See Concepcion*, 142 S. Ct. at 2404; *see also United States v. Newbern*, 51 F.4th 230, 232–33 (7th Cir. 2022).

Here, the government concedes that Morales is eligible for relief under the First Step Act. *See* Gov't Resp., at 9–10 (Dckt. No. 2044). The Court agrees. Because Morales was convicted under Count Nine with conspiracy to distribute crack cocaine, his conviction on that count is a "covered offense" under section 404, and he is eligible for a sentence reduction. *See McSwain*, 25 F.4th at 538.

Nevertheless, the government argues that, even though Morales is eligible for relief, the Court should decline to change his sentence. *See* Gov't Resp., at 10–13 (Dckt. No. 2044).

Step two of the inquiry under section 404 requires a district court "to undertake a 'complete review' of [the defendant's] motion and to determine whether he is entitled to relief." *See United States v. Shaw*, 957 F.3d 734, 743 (7th Cir. 2020) (quoting First Step Act, Pub. L. 115-391, 132 Stat. 5194, 5222 (2018)).

A district court is under no obligation to reduce a defendant's sentence, even if that defendant qualifies for relief. *See United States v. Fowowe*, 1 F.4th 522, 529 (7th Cir. 2021);

4

*Corner*, 967 F.3d at 665. But the court must follow certain procedures before it makes its decision.

Specifically, a district court "must begin by recalculating the statutory minimum and maximum that would have applied had §§ 2 and 3 of the Fair Sentencing Act been in effect at the time the movant was originally convicted." *Fowowe*, 1 F.4th at 529. And then, the court must calculate how the change to the statutory range affects the Sentencing Guidelines range. *See Concepcion*, 142 S. Ct. at 2402 n.6 ("[T]he First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range anchors the sentencing proceeding.") (cleaned up).

At that point, the district court is "authorized – as distinct from required – to consider" the "plethora of factors" in 18 U.S.C. § 3553(a) to determine the appropriate new sentence. *See Fowowe*, 1 F.4th at 529. A district court "may consider all relevant factors when determining whether an eligible defendant merits relief under the First Step Act," including "different statutory penalties, current Guidelines, post-sentencing conduct, and other relevant information about a defendant's history and characteristics." *Hudson*, 967 F.3d at 611–12. The entire "menu of legal and factual considerations" is on the table. *See Fowowe*, 1 F.4th at 529.

In determining whether it *should* reduce Morales's sentence from life in prison to something else, the Court considers the underlying offense, Morales's recent submissions, and the factors in 18 U.S.C. § 3553(a). *See Concepcion*, 142 S. Ct. at 2403; *Fowowe*, 1 F.4th at 529. This Court has taken the entire record into account, including everything in the PSR.

### A. Recalculating the Statutory Range and Guidelines Range

The Court begins by recalculating the statutory minimum and maximum under the Fair Sentencing Act, and then recalculating the Guidelines range based on that change.

In a nutshell, the Court concludes that the Act would not have changed Morales's statutory minimum and maximum sentence, and it wouldn't have changed his recommended sentence, either. Morales's statutory range would have remained 20 years to life because the Fair Sentencing Act did not alter the minimum or maximum ranges for the quantities of cocaine or marijuana that the jury found him accountable for. Based on a review of Morales's PSR, the Court concludes that Morales's recommended sentence under the Sentencing Guidelines still would have been life in prison, given the totality of the conduct.

Again, Morales was convicted of conspiring to possess, with the intent to distribute, three separate drugs. Counts One and Nine charged Morales with conspiring to possess with the intent to distribute (1) over five kilograms of cocaine, (2) over 50 grams of crack cocaine, and (3) over 1,000 kilograms of marijuana. *See* Second Superseding Indictment, at 23, 32 (Dckt. No. 227). The jury found beyond a reasonable doubt that Morales's conspiracy involved these quantities of drugs. *See* Special Verdict Forms, at 14–15 (Dckt. No. 1782).

The Fair Sentencing Act affected the statutory penalty for only one of those drugs (crack cocaine). The Act "raised the quantity of applicable drugs that triggered a [] mandatory minimum prison term; the Fair Sentencing Act changed the amount from an offense involving fifty grams of crack cocaine under prior federal law to two hundred and eighty grams." *See Fowowe*, 1 F.4th at 525.

At the time of Morales's conviction, however, a conspiracy conviction based on any *one* of the three quantities of drugs – including five grams of cocaine and 1,000 kilograms of marijuana – would have resulted in him receiving a mandatory minimum sentence of 20 years in prison and a maximum of life in prison. *See* 21 U.S.C. § 841(b)(1)(A)(ii), (iii), (vii) (1996).

6

The Act did not change the penalty for conspiring to possess with the intent to distribute cocaine or marijuana. Conspiring to distribute both drugs at these quantities *still* would have triggered a 20-year mandatory minimum prison term with a maximum term of life in prison for Morales. *See* 21 U.S.C. § 841(b)(1)(A)(ii), (vii) (2022).

So, Morales's statutory range would have been the same. The Fair Sentencing Act did not alter the minimum or maximum ranges for the quantities of cocaine or marijuana that the jury found him accountable for. Reducing the statutory sentence for crack cocaine would have had no impact when the statutory sentences for cocaine and marijuana remained 20 years to life. *See Richarson*, 2023 WL 2058309, at *6 (noting that "the guideline range . . . would have remained life imprisonment even if the Fair Sentencing Act's amendments had been in place at the time of the offense" because "the jury found Tate guilty of conspiracy to possess with intent to distribute controlled substances and the original sentencing court found by a preponderance of the evidence that 149 kilograms of heroin and 25 kilograms of cocaine base were reasonably foreseeable to Tate; thus making him subject to 21 U.S.C. § 841(a)(1)(A)").

Even if Congress had eliminated the penalty for crack cocaine offenses altogether, the answer would be the same. Morales's offenses based on cocaine and marijuana would still have triggered the mandatory minimum of 20 years, and the maximum of life in prison.

After recalculating the statutory minimum and maximum sentences, the next step is to recalculate the advisory range under the Guidelines. And once again, the answer lands in the same place. The Sentencing Guidelines recommendation would have remained the same – life in prison.

At the time of sentencing, Morales's *actual* total offense level was 52. *See* PSR, at 28 (Dckt. No. 1680). But because the maximum offense level under the Sentencing Guidelines is

7

43, Morales's total offense level was treated as if it were just 43. *Id.* Morales's criminal history category was set at VI – also the highest level – based on Morales's prior convictions. *Id.* at 30.

Morales does not argue that, after applying the Fair Sentencing Act, his total offense level would have fallen below 43 (a 10-point drop). And the Court's review of the PSR confirms that Morales's offense level, and therefore his Sentencing Guidelines range, is unchanged. Even if the offense level for the drug-related conduct hypothetically was lower, it would not matter. The other criminal conduct yielded the total offense level of 52.

Morales's PSR determined the combined offense level for Counts One and Nine by applying U.S.S.G. § 3D1.4. *Id.* at 26–28. That provision governs how to calculate the offense level when there is more than one crime. Under the Guidelines, the first step in determining the combined offense level is "taking the offense level applicable to the Group *with the highest offense level*." *See* U.S.S.G. § 3D1.4 (emphasis added).

In Morales's case, the drug-related crime (under either Count One or Count Nine) did not produce the highest offense level. The drug-related crime produced an offense level of 38. *See* PSR, at 27 (Dckt. No. 1680). But the other conspiracy crime produced an offense level of 47, given that it involved several murders. *Id.* So, the drug-related offense made no difference in the end because the other conspiracy conviction produced a higher offense level.

Under the Guidelines, a district court must identify the "highest offense level" when there is more than one crime. *See* U.S.S.G. § 3D1.4. And then, the district court must "increas[e] that offense level by the amount indicated" in a table that follows. *Id.* Basically, a district court must add up a number of "units," and they can lead to an increase of five offense levels.

But after a defendant accumulates at least five units, everything else is gravy. When a defendant accumulates more than five *units*, the district court must add five *levels* to the offense

8

level. Anything above and beyond five units makes no difference. The table tops out at an increase of five levels.

Here, Morales had 6.0 units, and the drug-related conduct contributed no units to that total. *See* U.S.S.G. § 3D1.4; PSR, at 27 (Dckt. No. 1680). That score lead to a five-level increase in the offense level, because anything above five units leads to a five-level increase. *See* U.S.S.G. § 3D1.4.

Simply put, the Fair Sentencing Act would not have reduced Morales's total offense level under the Sentencing Guidelines. His other criminal conduct produced an offense level of 47, so his total offense level would have still been 52 (but again, it is considered an offense level of 43 – the maximum offense level under the Guidelines), even without the drug-related conduct.

Similarly, Morales does not argue that the Fair Sentencing Act would have changed his criminal history category, which was based on his prior convictions – all of which were seemingly unrelated to crack cocaine. *Id.* at 28–30.

So, Morales has not shown that the Fair Sentencing Act would have changed his benchmark range under the Sentencing Guidelines. In combining his offense level and criminal history category, his recommended sentence would have still been life in prison.

In sum, the Court concludes that the "benchmark" sentencing range for Morales's conduct would have remained unchanged under the Fair Sentencing Act. If the Fair Sentencing Act were in place during his sentencing, Morales would have faced the same statutory minimum of 20 years, and the same statutory maximum of life in prison. His range under the Sentencing Guidelines would not have changed, either. His recommended range under the Sentencing Guidelines would still have been life in prison, even if the Fair Sentencing Act had applied.

B.	**Exercising Discretion to Reduce the Sentence**

The next question is whether the Court should exercise its discretion to reduce Morales's sentence. Based on the record, the Court declines the invitation to lower the sentence. After considering the "plethora of factors" under section 3553(a), the facts do not support a reduced sentence.[2] *See Fowowe*, 1 F.4th at 529. Morales received the sentence that he deserved.

Morales's motion is largely about the drug-related offense, but it buries the lead. The jury found him guilty for his role in a wide-ranging RICO conspiracy, and that conspiracy involved taking innocent lives. The murders weigh against any reduction of his sentence.

Additionally, Morales's involvement – and leadership – in the Insane Deuces gang lasted for years. As Judge Leinenweber said at Morales's sentencing, "You, Mr. Morales, have been involved in gang violence for over 20 years. You had several periods where you were a leader in a gang, not the top leader but a leader in a gang, and while you were a gang leader, much of the violence occurred." *See* Sent'g Tr., at 29:18-22 (Dckt. No. 1774).

Much violence indeed. By Judge Leinenweber's count, during Morales's time in the gang, there were at least 18 to 20 killings or attempted killings. *Id.* at 39:22-24. And while Morales may not have been the one to pull the trigger in each of those instances, he was the one calling the shots. *Id.* at 40:2-6.

His time in the Insane Deuces also came with massive amounts of drugs. Remember, the jury found that Morales conspired to distribute sufficient quantities of both cocaine and

---

[2] Under *Concepcion*, courts can consider "intervening changes of law . . . in exercising their discretion to reduce a sentence pursuant to the First Step Act." 142 S. Ct. at 2404. One relevant change in law not raised by the parties came from 21 U.S.C. § 841(b)(1)(A), the statute that enhanced Morales's sentence. In 2009, a defendant who violated § 841(a) and had a prior conviction for a felony drug offense faced a mandatory minimum sentence of 20 years in prison. *See* 21 U.S.C. § 841(b)(1)(A) (2009). Today, the same defendant would face only a 15-year mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(A) (2022). But because the parties didn't raise the point, the Court didn't consider it at step two of its analysis. And even if it had, the slight change in the law would not have affected the Court's ultimate conclusion.

marijuana to trigger the 20-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). Morales shared responsibility for vast amounts of crack cocaine, too. The amount listed in Morales's presentence investigation report is significantly higher than the amount in the jury verdict.

According to the PSR, Morales and his co-conspirators were accountable for over *1.5 kilograms* of crack cocaine. "[T]he narcotics conspiracy in which the defendant participated involved over 150 kilograms of cocaine, *over 1.5 kilograms of crack cocaine* and over 1,000 kilograms of marijuana." *See* PSR, at 11 (Dckt. No. 1680) (emphasis added).

Morales's current motion does not challenge that factual finding. And one kilogram is equal to 1,000 grams. So the conspiracy involved at least 1,500 grams of crack cocaine.

Before the Fair Sentencing Act, a defendant needed to distribute only 50 grams to qualify for the mandatory minimum sentence. The Fair Sentencing Act increased the amount of crack cocaine needed to trigger the mandatory minimum sentence to 280 grams. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2022).

The Fair Sentencing Act raised the roof, but Morales blew right through it. Morales and his co-conspirators distributed 1,500 grams of crack cocaine, more than five times the current level (280 grams) required to get him a minimum sentence of 20 years and a maximum sentence of life.

Even under the Fair Sentencing Act, Morales could have qualified for the mandatory minimum because the conspiracy involved 1,500 grams of crack cocaine, which is far more than the 280 grams under the new standard. *See Richarson*, 2023 WL 2058309, at *4; *see also United States v. Curb*, 2019 WL 2017184, at *3 (N.D. Ill. 2019).

Of course, the Court recognizes that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), the Sixth Amendment requires that a jury find beyond a reasonable doubt any fact that would increase a statutory maximum or minimum penalty. And here, the jury did not decide whether Morales distributed more than 280 grams of crack cocaine (*i.e.*, the current standard). The reason was simple – the standard at that time topped out at anything above 50 grams. Pinning down the exact amount above 50 grams made no difference.

Even so, the Court can consider the facts in the PSR when applying the section 3553(a) factors. *See King*, 40 F.4th at 596 (noting that, when applying the Fair Sentencing Act, "the judge may consider everything that would have been pertinent at an original sentencing"). And the Court can consider the facts in the PSR when deciding whether to exercise its discretion and lower the sentence under the First Step Act.

In sum, the conduct in the case was serious, and then some. In light of the duration and gravity of the crimes, and Morales's role in the criminality, Morales doesn't get very far in seeking a reduction in his sentence.

Overall, the nature and circumstances of Morales's offense do not support resentencing. *See* 18 U.S.C. § 3553(a)(1). Murder is a serious offense, and it deserves a serious punishment. It also remains "a serious matter to play an important role in a conspiracy selling an illegal substance," and "the evolving view towards crack-cocaine offenses does not change that." *See United States v. Price*, 835 F. App'x 141, 142 (7th Cir. 2021).

Applying the other sentencing factors in 18 U.S.C. § 3553(a) also does not support a reduction in Morales's sentence.

12

A lengthy prison sentence – consistent with the statutory and Guidelines ranges – is necessary to reflect the seriousness of Morales's offenses and to promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A). Morales's life sentence is also necessary to deter future criminal conduct, particularly by setting an example of gang leaders who orchestrate drug sales and violence. *Id.* at § 3553(a)(2)(B). Morales committed serious offenses, over decades, as a member of the Insane Deuces. Others need to know that they risk hefty punishment by engaging in similar behavior. Finally, as the sentencing court noted, the need to protect the public from Morales supports a long sentence. *See* Sent'g Tr., at 41:3-6 (Dckt. No. 1774) ("Protect the public from further crimes of the defendant. That's about the only thing I can say we definitely will do. The public will be protected from you while you are incarcerated.").

Morales asks this Court to consider in mitigation his background and his rehabilitation. As reflected in his PSR, Morales completed school only through the eighth grade, began using marijuana at the age of 12, and began drinking alcohol at 15. *See* PSR, at 33–34 (Dckt. No. 1680). Moreover, "[a]s reflected in the PST, there was no structure in the family home and he began associating with the wrong people, in hopes of some semblance of a family unit." Def.'s Reply, at 5 (Dckt. No. 2056).

In terms of rehabilitation, Morales points to his "long record of programming," including various skills and academic course, and his remorse for his actions. *Id.* at 5–6.

None of these factors can overcome the serious nature of Morales's offenses and his role in a violent criminal enterprise. *See* 18 U.S.C. § 3553(a)(1).

For starters, Judge Leinenweber already had information about Morales's background when it sentenced him to life in prison. Judge Leinenweber still came to the conclusion that a

13

life sentence was appropriate. So too today. While unfortunate, Morales's background goes a very short way in excusing the violent and harmful conduct for which he was convicted.

Likewise, the Court commends the apparent rehabilitative progress Morales has made since his incarceration. Even so, this Court must weigh these factors against the serious nature of Morales's offenses of conviction and his longstanding role in the Insane Deuces. In doing so, the record fails to support any reduction in his sentence. This Court agrees with Judge Leinenweber that the nature of Morales's offenses justify a lengthy – and within Guidelines – sentence. The completion of a handful of educational and personal development courses doesn't change that conclusion.

In sum, the Court declines to exercise its discretion under the First Step Act to resentence Morales. Morales distributed large quantities of drugs that would justify the same sentence even if he were originally sentenced under the Fair Sentencing Act. The serious nature of his violent offenses, and his decades-long membership in the Insane Deuces gang and the several murders in which he played a role, weigh against discretionary resentencing. These factors are not overcome by Morales's background or rehabilitative efforts.

**II.     Compassionate Release**

Morales also seeks a sentence reduction through 18 U.S.C. §3582(c)(1)(A). He argues that the Court should grant him compassionate release because of subsequent non-retroactive changes in sentencing laws and his progress toward rehabilitation. *See* Def.'s Reply, at 3 (Dckt. No. 2056).

Congress established a "default rule that the district court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Sanford*, 986 F.3d 779, 781 (7th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). But under 18 U.S.C. § 3582(c)(1)(A), a Court

may grant a motion to reduce a term of imprisonment after the defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See* 18 U.S.C. § 3582(c)(1)(A).

After exhaustion, a motion for compassionate release involves two steps. *See United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022). First, the defendant must present an "extraordinary and compelling" reason warranting a sentence reduction. *Id.*; 18 U.S.C. § 3582(c)(1)(A)(i). Second, the Court must weigh any applicable sentencing factors from 18 U.S.C. § 3553(a) to determine whether a reduction is appropriate. *See Peoples*, 41 F.4th at 840; 18 U.S.C. § 3582(c)(1)(A)(i).

The Court denies the motion for compassionate release, for a few reasons.

First, the government objects to the motion on the basis that Morales has not exhausted his available administrative remedies. *See* Gov't Resp., at 18 (Dckt. No. 2044). According to the government, "Morales does not assert, much less establish, that he previously submitted to the warden of his facility an administrative request for compassionate release, and the Bureau of Prisons reports that it has no record of any such request." *Id.*

Morales offers no response to the government's assertion. Accordingly, the Court finds that he has not shown exhaustion of administrative remedies as required by section 3582.

The problems don't end there, though. Additionally, Morales has not shown an "extraordinary and compelling" reason for his release.

He seems to argue that two reasons support his release: (1) non-retroactive changes in sentencing laws, and (2) his rehabilitation. *See* Def.'s Reply, at 1 (Dckt. No. 2056). But Seventh Circuit case law clearly holds that neither reason constitutes an extraordinary and compelling

15

reason for compassionate release. *See United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) ("When deciding whether 'extraordinary and compelling reasons' justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes."); *Peoples*, 41 F.4th at 842 ("[S]tanding alone, . . . rehabilitation efforts are not a ground for release under § 3582(c)(1)(A).").

Finally, even if Morales had offered extraordinary and compelling circumstances justifying his release, the 3553(a) factors would not support release. As described above, Morales played a lead role in several serious offenses. The nature and circumstances of the offenses support his life sentence, as does the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to deter, and to protect the public.

## Conclusion

For the foregoing reasons, Morales's motion for a sentence reduction under the First Step Act and/or for compassionate release under 18 U.S.C. §3582(c)(1)(A) is denied.

Date: March 8, 2023

Steven C. Seeger
United States District Judge